715 P.2d 297
**STATE of Arizona, Appellee,**

v.

**Edward H. SCHNEIDER, Appellant.**

**No. 1 CA–CR 7962.**

Court of Appeals of Arizona,
Division 1, Department B.

Nov. 26, 1985.

Review Denied March 4, 1986.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Chief Counsel Criminal Div. and David R. Cole, Asst. Atty. Gen., Phoenix, for appellee.

Miller & Miller, P.C. by Murray Miller and Lee Allen Johnson, Phoenix, for appellant.

OPINION

MEYERSON, Judge.

Appellant was convicted of ten counts of theft by false pretenses, one count of scheme and artifice to defraud, and one count of illegal control of an enterprise, following a trial by jury. He was sentenced to serve 20 years on the theft counts, 14 years on the count of scheme and artifice to defraud, and 10 years on acquiring or maintaining control of enterprise through racketeering or its proceeds. The sentences were ordered to run concurrently. The trial court additionally ordered appellant to pay a total of $100,000 in restitution to the victims. Appellant timely filed a notice of appeal and raises five issues:

1. Whether the trial court properly instructed the jury on the theft charges;
2. Whether there was a fatal variance between the indictment and proof on Count 24, scheme to defraud;
3. Whether appellant was denied a fair trial by virtue of prosecutorial misconduct;
4. Whether the trial court erred in sentencing appellant;
5. Whether the trial court abused its discretion in imposing maximum sentences.

Appellant was originally indicted on 25 charges. Counts 1 through 11 accused him of committing theft by false pretenses; Counts 12 through 22 accused him of committing fraud in the sale of securities based on the same transactions underlying the theft charges; Count 23 charged appellant with committing unregistered sale of securities; Count 24 charged scheme and artifice to defraud; and Count 25 charged appellant with acquiring or maintaining control of an enterprise through racketeering or its proceeds. Prior to the trial the trial court granted appellant's motion to dismiss Count 23. At the close of the state's case, the trial court dismissed Counts 12 through 22. After the case was submitted to the jury, the jury indicated that it agreed on 12 of the charges but was unable to reach a verdict on Count 8, theft. The state moved to dismiss Count 8, and the jury returned guilty verdicts on the remaining charges.

Briefly, the evidence showed that appellant involved approximately 40 people in a fictitious investment scheme. In each instance appellant offered his victims an opportunity to invest in the purchase and resale of surplus industrial fasteners. At no time did he actually purchase or resell anything. Appellant would convince each investor that he would make a substantial profit within weeks or months of his investment.

For example, appellant told one victim that an investment of $36,920 would yield a 40% profit within six to eight weeks. Some time later, appellant offered the same man an opportunity to invest $23,000 which would allegedly result in a $9,000 profit in thirty days. Ultimately, the investor lost a total of $9,476. Appellant convinced another individual that a $23,000 investment would net a $15,000 profit within four months. That investor lost all his money. A third investor was promised a 75% profit within nine months of his $40,000 investment. He invested approximately six times with appellant, and ultimately lost $75,140.

Appellant involved his victims in what is commonly known as a "Ponzi" scheme. *See generally United States v. Shelton,* 669 F.2d 446, 449 n. 2 (7th Cir.1982); *United States v. Cook,* 573 F.2d 281, 282 n. 3 (5th Cir.1978). After obtaining money from one investor, appellant would pay off prior investors to lure them into investing more money with him. The victims thought that they were making money. In fact, appellant was taking money from A to give to B, then taking money from B to give to C. In the end, hundreds of thousands of dollars were lost by the victims of appellant's scheme.

I. THEFT INSTRUCTION

A. *Failure to Instruct on Reliance*

Appellant argues that the trial court erred in failing to give his requested in-

struction on the element of reliance with regard to the charges of theft by false pretenses. Appellant was charged with violations of A.R.S. § 13–1802(A)(3) which provides:

A person commits theft if, without lawful authority, such person knowingly ... [o]btains property or services of another by means of any material misrepresentation with intent to deprive him of such property or services.

Appellant requested an instruction on reliance as follows:

With respect to the charges of theft by false pretenses, the individuals claimed to have been defrauded by a false representation must have relied upon the representation; that is, the representation must have been a proximate cause of their conduct in entering into the transaction and without such representation they would not have entered into such transaction.

The fraud, if any, need not be the sole proximate cause if it appears that reliance upon the representation substantially influenced these persons' actions, even though other influences operated as well.

Reliance upon a representation may be shown by direct evidence or may be inferred from the circumstances.

The trial court refused to give appellant's requested instruction and instead instructed the jury on the definition of material misrepresentation as follows:

'Material misrepresentation' means statement of fact and promises which are not intended to be kept which are fraudulent and which are instrumental in causing the wrongful control or transfer of property.

Appellant contends that the trial court's instruction on material misrepresentation was insufficient to instruct the jury on the element of reliance.

■ One of the elements of theft by false pretenses is reliance. The evidence must establish that there was a material misrepresentation upon which the victim relied in giving up his property or services.

*State v. Fierson,* 146 Ariz. 287, 705 P.2d 1338 (App.1985).

The deceit must be 'material' to constitute the offense, in the sense that it must be a significant factor in the transaction.... Materiality seems to require that the victim to some extent must believe the pretense to be true, but the greater focus is the objective issue of whether the misrepresentation was instrumental in effecting transfer of goods.

R. Gerber, *Criminal Law of Arizona* 249 (1978). Appellant contends that the instruction on material misrepresentation was insufficient to advise the jury that an offense was not committed unless the victim of the conduct relied on misrepresentation. He argues that the court's instruction did not directly tell the jury in understandable terms that they must find reliance by the victims before they could convict him on the charges of theft. He also argues that the trial court's failure to adequately instruct on reliance was not harmless error because the evidence on the issue of reliance was not strong. He points to the fact that each of the investors testified to several factors which motivated their investment. We disagree.

■ The criminal code defines material misrepresentation as a "pretense, promise, representation or statement of present, past or future fact which is fraudulent and which, when used or communicated, is instrumental in causing the wrongful control or transfer of property or services." A.R.S. § 13–1801(3) (currently A.R.S. § 13–1801(A)(8)). The trial court instructed the jury in accordance with the definition of material misrepresentation set forth in the statute. A misrepresentation cannot be instrumental in causing transfer of property if the victim does not rely on the misrepresentation. The trial court's instruction required the jury to find that appellant did make misrepresentations to each of his victims and that the misrepresentations were instrumental in causing the victims to give their property to appellant. We find that the instruction on material misrepresenta-

tion adequately advised the jury of the need to find that the victims relied upon appellant's representations. *See State v. Finch*, 223 Kan. 398, 573 P.2d 1048 (1978).

B. *Instruction on Justifiable Reliance*

Appellant next argues that the trial court erred in refusing to instruct the jury on justifiable reliance. Appellant requested the following instruction:

> With respect to the charges of theft by false pretenses, the individuals claimed to have been defrauded by a false representation must not only have acted in reliance thereon but must have been justified in such reliance, that is, the situation must have been such as to make it reasonable for them, in the light of the circumstances and their intelligence, experience and knowledge, to accept the representation without making an independent inquiry or investigation.

The instruction was rejected by the court.

In *Linne v. State*, 674 P.2d 1345 (Alaska App.1983), the Alaska Court of Appeals faced the argument that an objective, reasonable person standard should be applied in theft by deception cases. In rejecting that argument, the court stated:

> The offense of theft by deception is plainly intended to protect unwary members of the public from a broad range of fraudulent or deceptive schemes. To carve out of the offense a blanket exception for victims whose deception might be deemed unreasonable would be anomalous. Those who engage in deception for pecuniary gain quite naturally tend to select as their victims people who are the most susceptible to misrepresentations. The victims of deceptive schemes will frequently be particularly vulnerable people. If guilt of theft by deception were determined by an objective reasonable person standard, those who stand in greatest need of protection against deceptive schemes would in effect be declared fair game. Instead of discouraging the use of deceptive means to obtain property, the theft by deception statute would do no more than encourage offenders to be selective in their choice of victim.

*Id.* at 1353. *See also State v. Collins*, 39 Conn.Supp. 363, 465 A.2d 782 (Super.Ct. 1983); *Commonwealth v. Nappi*, 288 Pa. Super. 240, 431 A.2d 1027 (1981); *State v. Zorich*, 72 Wash.2d 31, 431 P.2d 584 (1967). We conclude that only actual reliance is required for a conviction under the Arizona statute.

First, the language of our statute does not impose an objective standard. Second, appellant's construction of the statute would create the paradoxical result that the most vulnerable and unsophisticated could be prey to the likes of appellant. White collar criminals would be free to act with impunity as long as they choose for their victims, the naive, the greedy or the foolhardy. The legislature has not seen fit to exempt this class of victims from the theft statute. Likewise, we see no reason to do so by judicial fiat.

II. VARIANCE WITH INDICTMENT REGARDING COUNT 24

Appellant next contends that his conviction on Count 24, fraudulent schemes and artifices, must be reversed because of a fatal variance between the indictment and the proof. Count 24 alleged that appellant committed the offense of fraudulent schemes and artifices with regard to the eleven investors who were the victims of the charges of theft. Appellant argues that the state introduced testimony of approximately forty persons who identified themselves as having invested with him during the same time. He concludes therefore that there was a variance between the state's allegation of a scheme directed at eleven individuals, and its proof of a more general scheme involving numerous additional individuals. He concludes that the variance denied him the right to double jeopardy protection from further prosecution. We disagree.

In *State v. Neese*, 126 Ariz. 499, 616 P.2d 959 (App.1980), we enunciated the standards to be applied in determining

whether a variance between the indictment and the proof presented at trial is fatal.

'We have held that in order to constitute grounds for reversal, a variance between proof and indictment must affect the substantial rights of the defendant by preventing him from presenting his defense properly, taking him unfairly by surprise, or exposing him to double jeopardy.'

*Id.* at 504, 616 P.2d at 964 (quoting from *United States v. Lyman,* 592 F.2d 496, 500–501 (9th Cir.1978)). In order to constitute reversible error, a variance must not only exist, but it must affect the substantial rights of the parties such that it is prejudicial. *Id.* at 504, 616 P.2d at 964. In reviewing appellant's contentions we note that he does not argue that he was unable to properly present his defense, or that he was taken unfairly by surprise.[1] He contends merely that the variance between the indictment and the proof exposed him to double jeopardy.

We note at the outset that the indictment charged fraudulent schemes and artifices with regard to the eleven victims of the theft counts. Evidence was presented establishing fraudulent schemes and artifices with regard to those eleven victims. Additional evidence was presented with regard to other victims also.

In *State v. Phelps,* 125 Ariz. 114, 608 P.2d 51 (App.1980), this court held that Rule 13.5(b), Arizona Rules of Criminal Procedure, providing for automatic amendment to the charging document to conform to the evidence, operated to obviate a claim of a fatal variance between the indictment and the proof. In that case, evidence was presented that the defendant tendered a check to Loeb, Rhodes & Company rather than James Geary.. The indictment charged him with having tendered a check to James Geary. This court applied Rule 13.5(b) to amend the indictment to conform to the evidence by substituting the name Loeb, Rhodes & Company for that of James Geary. In so doing the court questioned whether the amendment violated two rights of the defendant: (1) whether the defendant was deprived of notice of the charges, and was thus unable to defend against them, and (2) whether the acquittal of the amended charge would provide a double jeopardy defense to a subsequent prosecution on the original charge. This court concluded that the defendant was on notice of the charges and that an acquittal of the amended charge provided a double jeopardy defense to a subsequent prosecution on the original charge. In discussing the double jeopardy issue, the court pointed out that the defense was not limited to the four corners of the indictment, and the entire record was available to bar a subsequent prosecution. *See also State v. Barber,* 133 Ariz. 572, 577, 653 P.2d 29, 34 (App.1982).

Applying the *Phelps* test to this case, we conclude that the amendment did not change the nature of the charge. Although appellant argues that a change in the scope of the scheme constitutes a change in the offense charged, we disagree. The charge in this case was fraudulent schemes and artifices as to the eleven victims. The testimony of the additional investors did not change the nature of the charge. In *State v. Suarez,* 137 Ariz. 368, 373, 670 P.2d 1192, 1197 (App.1983), we noted that "a scheme to defraud thus implies a plan, and numerous acts may be committed in furtherance of that plan." In this case, it is clear that appellant had a plan to solicit investments from numerous people, and used the money garnered from each to pay off other investors while skimming substantial sums off the top for himself. His plan was manifested in a course of conduct involving many different individuals and numerous transactions. The success of the plan depended on appellant's ability to obtain the numerous investors in order to pay the previous investors. It is clear therefore that he did not formulate multiple schemes to defraud, but one

1. In his reply brief, appellant alleges that the variance between the proof and the indictment was prejudicial to him. He fails to explain, however, how this was so.

scheme to defraud which he could only keep going by seeking additional investors.

## III. PROSECUTORIAL MISCONDUCT

Appellant next argues that his conviction should be reversed on the grounds of prosecutorial misconduct. He argues that the prosecutor improperly thanked the judge when she ruled in his favor on his objections, and that the prosecutor improperly argued with the trial judge in front of the jurors in connection with several objections. The state concedes that appellant's contentions are borne out by the record. The state responds by pointing out numerous instances of alleged misconduct on the part of defense counsel and concludes that in determining whether appellant is entitled to relief, this court should consider the totality of the situation including defense counsel's misconduct.

We are not inclined to weigh the improprieties of each counsel against the other to determine whether appellant is entitled to a reversal on the grounds of prosecutorial misconduct. It is abundantly clear that over the course of a trial which lasted several months, both counsel acted improperly on several occasions. The test to be applied is whether appellant was prejudiced by the misconduct of the prosecutor, and whether the cumulative effect of the misconduct denied him a fair trial. *State v. Filipov*, 118 Ariz. 319, 576 P.2d 507 (App. 1977). We must determine whether there was a strong possibility that the prosecutor's misconduct influenced the verdict by calling to the attention of the jurors matters which they would not be justified in considering. *State v. Woodward*, 21 Ariz. App. 133, 516 P.2d 589 (1973).

We note that appellant complains of about ten instances of misconduct which occurred over a very lengthy and hotly contested trial. As to each incident, the trial court either admonished the prosecutor in front of the jury or advised the jury to disregard the prosecutor's remarks. In none of the instances did the prosecutor argue his personal belief of the defendant's guilt, nor did he call matters to the atten-

tion of the jury which they would not be justified in considering in reaching their verdict. It is clearly improper for a prosecutor to thank a court for favorable rulings in response to his objections. It is also improper for a prosecutor to improperly argue the burden of proof. However, these matters were cured by the court's instructions to the jury to disregard the remarks of the prosecutor. Given the length of the trial, and the court's curative instructions, we conclude that appellant was not prejudiced by the instances of prosecutorial misconduct.

## IV. SENTENCING PURSUANT TO A.R.S. §§ 13–604(D), (H)

### A. *Allegations of Prior Convictions*

Appellant next argues that the state's method of charging prior convictions was improper based on *State v. Diaz*, 142 Ariz. 136, 688 P.2d 1028 (App.1984), *adopted*, 142 Ariz. 119, 688 P.2d 1011 (1984). In this case the state filed an amendment to the indictment prior to trial charging, pursuant to *State v. Hannah*, 126 Ariz. 575, 617 P.2d 527 (1980), that any conviction which arose from any of the theft counts would be prior convictions for sentencing purposes on each of the other theft counts. As to each of the theft counts, appellant was convicted and sentenced pursuant to A.R.S. § 13–604(D) as a repetitive offender with two prior convictions.

In *State v. Diaz* the court of appeals held that when two charges are consolidated for trial, only one of them may be considered as a prior to the other. The court reasoned that if each of the convictions was considered a prior for the other, a defendant would have a prior conviction without ever having committed the original offense. The court concluded that the state could allege only one of the two charges as a prior to the other. The supreme court adopted the court of appeals' holding. Appellant concludes that the state's allegation of prior convictions was defective and should have been dismissed.

■ We agree that the state's allegation of prior convictions was defective under *State v. Diaz. See also State v. Superior Court*, 142 Ariz. 280, 689 P.2d 539 (1984). Implicit in the court's holding in *Diaz* is the recognition that at the point an offense is designated as a prior, a sequential relationship between the convictions is established. In other words, where there are two convictions each cannot logically be considered prior to the other. Once one is designated as the prior, the other must necessarily be the principal or main conviction. Once this concept is established, then it is apparent that in the case of multiple convictions, there will always be at least two primary convictions for which there cannot be two priors. Consider the following table in a hypothetical case involving four charges:

| Primary Convictions | Prior 1 | Prior 2 |
|---|---|---|
| I | II | III |
| II | III | IV |
| III | IV | — |
| IV | — | — |

Once Counts II and III are designated as prior to Count I, Count I cannot be used as a prior for Counts II and III. This is true because an arbitrary, sequential relationship has been established between the three convictions. Thus, only Counts III and IV are available as priors for Count II. For Count III, only Count IV is available for use as a prior conviction. Count II may not be used as a prior. That is the express holding in *Diaz*. Similarly Count I cannot be used because Count III has been designated as a prior to it. Turning to Count IV, no conviction remains to be used as a prior. Count III cannot be used as a prior to Count IV because Count IV has been used as a prior to Count III. Count IV has also been used as a prior to Count II and therefore Count II is out. Count I cannot be used as well. Count IV has been designated as a prior to Count II; Count II has been designated as a prior to Count I.

Thus, Count IV has been "ordered" to be prior to Count I; hence Count I cannot be used as a prior to Count IV. No matter how many convictions are involved there will always be at least one conviction which may have only one prior and one conviction which may have no priors.[2]

Accordingly, appellant's sentence is modified as follows: Count 10 theft, with one prior conviction; Count 11, theft, with no prior convictions. Appellant must therefore be resentenced on Counts 10 and 11.

**B. *Application of A.R.S. § 13–604(H)***

Appellant also argues that A.R.S. § 13–604(H) regarding spree offenses made it unlawful for the trial court to treat the theft convictions as priors for the other theft convictions. He contends that each of the theft convictions was committed "on the same occasion." We disagree. The code provides that "convictions for two or more offenses committed on the same occasion shall be counted as only one conviction for purposes of this section." A.R.S. § 13–604(H). In *State v. Perkins*, 144 Ariz. 591, 699 P.2d 364 (1985), the supreme court surveyed the law pertaining to so-called "spree" offenses to determine what constituted an "occasion" for purposes of A.R.S. § 13–604(H). The court ultimately based its decision on several factors. The court wrote that with regard to three separate armed robbery incidents, there were distinct crimes committed against distinct victims, with different valuables taken in each robbery. The court noted that the evidence used to establish the elements of each robbery was distinct and that there was a separate danger created in each robbery. The court also pointed out that the defendant did not form the intent to commit a new robbery until after completing the prior robbery. The court pointed out that the additional robberies were not necessary to complete the initial robbery or to

---

2. The "logic" of our holding can be seen by comparing the present case with a situation in which multiple charges are severed and tried independently. In the first trial, there will be no prior convictions. In the second trial, there could be only one prior conviction. In the third trial, (and all subsequent trials) there could be at least two prior convictions. Thus, regardless of whether the charges are consolidated or severed, there would always be one charge for which there are no priors, and one charge for which there can only be one prior.

escape afterwards. Finally the court noted that there were different eyewitnesses to each offense. The robberies in *Perkins* occurred over 1½ hours, nine persons were robbed, and ten persons were threatened with a deadly weapon.

 We acknowledge that the crimes of violence which were the subject of the decision in *Perkins* are materially different than the white collar criminal activity at issue here. Nevertheless, we conclude that the offenses were not committed on the same occasion. There were distinct thefts committed with regard to each victim, with different sums taken from each victim. The testimony used to establish each theft was distinct. Despite the inter-relationship between the theft offenses, the fact remains that each theft stands on its own as a separate and distinct crime. We cannot construe the word "occasion" so broadly that it would cover discrete criminal offenses committed over a nineteen month period. We conclude that the trial court did not err by refusing to consider the theft offenses as only one conviction for sentencing purposes.

## V. EXCESSIVE SENTENCE

Finally, appellant contends that the trial court erred in imposing the maximum sentence on each of his twelve convictions. He argues that the trial court erred in considering actions done by appellant following the offenses in the instant case, but before the trial. He also argues that the court improperly considered defense counsel's cross-examination of certain witnesses as a factor in imposing aggravated sentences.

 At sentencing, the trial court did consider allegations of misconduct committed by appellant while the trial was pending. Evidence was presented which tended to establish that appellant continued to engage in fraudulent activities after he was charged with the instant offenses. We find that the trial court was clearly justified in considering appellant's subsequent conduct. The court stated that because of appellant's personality and intellect, if he were allowed to continue in the same course of conduct, he would do so. The court concluded that based on that conduct, appellant was a danger to society, and imposed sentence to protect society from his activities. We conclude that the trial court properly considered appellant's post-arrest conduct in determining the sentence to be imposed. *State v. Herrera*, 121 Ariz. 12, 15, 588 P.2d 305, 308 (1978).

With regard to matters involving the cross-examination, the trial court pointed out that appellant had his attorney ask questions which were designed to embarrass the witnesses and which were irrelevant insofar as whether or not a crime was committed. Specifically, the questions involved whether or not one of the doctors was involved in an abortion clinic, and whether another witness went to Las Vegas with a woman to whom he was not married. The trial court used the testimony to conclude that appellant had no remorse for what he had done, and had no sympathy for the people that he victimized. The trial court pointed out that counsel would not have asked the questions had appellant not told him to do so.

 Appellant contends that the court's consideration of the cross-examination constitutes an infringement on his constitutional right to cross-examination. If the questions asked had been the subject of proper cross-examination, we would have no hesitancy in finding that the trial court's consideration of the questions for purposes of sentencing infringed on appellant's right to cross-examination. However, the questions asked constituted improper cross-examination, and were designed to embarrass the witnesses. Accordingly, the examination was not constitutionally protected. *State v. Munguia*, 137 Ariz. 69, 71, 668 P.2d 912, 914 (App.1983). The trial court referred to the matters to point out appellant's demeanor during the trial and his lack of remorse for his actions. The trial court may properly consider appellant's demeanor during trial and draw conclusions about his character therefrom in determining a proper sentence to be imposed. *See State v. Herrera*, 121 Ariz. at 15, 588 P.2d at 308. We conclude that the trial court

did not err in considering appellant's conduct and demeanor during the trial as a basis for imposing an aggravated sentence.

We also note that as justification for the aggravated sentences, the trial court noted the number of victims involved, the substantial amounts of money which were stolen, the need to protect society from appellant's criminal activities, the premeditated nature of appellant's crimes, and the fact that while appellant was awaiting trial, he was involved in similar dealings. Each of these factors is a valid matter for the trial judge to consider in imposing sentence. We conclude that the trial court did not abuse its discretion in imposing maximum terms for each offense.

For the foregoing reasons, the judgments are affirmed and the sentences modified in accordance with this opinion. This matter is remanded to the trial court to resentence appellant on Counts 10 and 11, theft.

CONTRERAS, P.J., and FROEB, C.J., concur.