NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

DANNY WISE, *Appellant.*

No. 1 CA-CR 13-0888
FILED 11-3-2015

Appeal from the Superior Court in Maricopa County
No.  CR2009-173845-001
The Honorable David B. Gass, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

The Hopkins Law Office, P.C., Tucson
By Cedric Martin Hopkins
*Counsel for Appellant*

**MEMORANDUM DECISION**

Judge Kenton D. Jones delivered the decision of the Court, in which Presiding Judge Maurice Portley and Judge John C. Gemmill joined.

**J O N E S**, Judge:

¶1        Dan Wise appeals his convictions and sentences for eight counts of fraudulent schemes and twenty-two counts of theft. After searching the entire record, Wise's defense counsel has identified no arguable question of law that is not frivolous. Therefore, in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969), defense counsel asks this Court to search the record for fundamental error. Wise was afforded the opportunity to file a supplemental brief *in propria persona*, which he elected to do. After reviewing the record, we find no error. Accordingly, Wise's convictions and sentences are affirmed.

## FACTS[1] AND PROCEDURAL HISTORY

¶2        Wise was indicted on eight counts of fraud and twenty-two counts of theft[2] based upon events occurring between June 2006 and April 2008 while Wise was engaged as the victims' accountant. At trial, six victims, several of whom were family or close friends of Wise, testified Wise, a certified public accountant, regularly prepared their tax returns, represented he had filed returns or requests for an extension to file returns with the Internal Revenue Service and state tax agencies (collectively, the IRS) between 2006 and 2008, and further represented he had paid estimated taxes on their behalf. Wise advised the victims of the amount he allegedly

---

[1]        We view the facts in the light most favorable to sustaining the jury's verdict, with all reasonable inferences resolved against the defendant. *State v. Harm*, 236 Ariz. 402, 404 n.2, ¶ 2 (App. 2015) (quoting *State v. Valencia*, 186 Ariz. 493, 495 (App. 1996)).

[2]        Counts 1 through 16 alleged theft and Count 17 alleged fraud against Arthur K. Count 18 alleged fraud and Count 19 alleged theft against Francesco C. Counts 20, 22, and 24 alleged theft and Counts 21, 23, and 25 alleged fraud against Elissa G. Counts 26 and 27 alleged theft and Count 28 alleged fraud against Carl F. Counts 29 and 30 alleged fraud against Beth S. and Neil B., respectively.

paid on their behalf, and they "reimbursed" him those sums. However, the IRS was never paid.

¶3　　　　Although amounts varied from victim to victim, the total sum Wise took was nearly $1 million. Each victim testified he or she primarily communicated directly with Wise on all issues but occasionally relayed to or received routine information from Wise's assistant, and none of the victims were aware of any other employees or partners working with Wise.

¶4　　　　When confronted by the victims, Wise blamed the IRS for misplacing or misapplying the funds and promised each victim he would resolve the issue. After months of delay, Wise was ultimately unable to document that the checks had ever been sent to or negotiated by the IRS. At trial, a representative from Wise's bank testified that none of the checks he wrote to the IRS for payment of the victims' taxes had ever been presented for payment. Wise ultimately paid the full amount owed to the IRS by Neil B. and Beth S., including interest and penalties, after they reported his conduct to law enforcement; the other victims, however, received nothing.

¶5　　　　In mid-2008, three of the victims filed complaints against Wise with the Arizona State Board of Accountancy. Wise failed to respond to the complaints in writing as required by law and, in December 2008, consented to the revocation of his certification.[3]

¶6　　　　When confronted by the police in early 2009, Wise advised he had been an accountant for twenty-five years, but retired approximately two years prior. He stated he had legal issues with a previous business partner resulting in difficulties with his banking institution.

¶7　　　　Wise testified in his defense at trial. He characterized himself as an "absentee owner" of an extremely busy accounting firm who, between 2004 and 2008, delegated more and more responsibility to his assistant to manage both his professional and personal affairs so he could develop his business and spend more time with his family. As a result, Wise's assistant had complete access to his business and personal information, including personal identification information, accounts, passwords, and the company checkbook. But, according to Wise's testimony, as his business continued to grow, he did not have time to monitor what occurred within the office.

---

[3]　　　A fourth victim filed a complaint in February 2009, after Wise's certification had been revoked.

¶8        Wise admitted receiving funds from the victims as "repayment" for their tax liability and acknowledged being ultimately responsible for what happened within his office, but denied any intent to steal money and denied knowledge of where the funds were. He testified his signature was "a scribble" that could have been signed by anyone, including his assistant, and that he assumed his assistant was performing the ministerial tasks he assigned including forwarding payment to the IRS on behalf of the victims as promised and confirming the IRS later negotiated the checks. Wise testified that only when he closed his business in late 2008 did he realize his files were not well kept and his reliance upon his assistant may have been misplaced, intimating she could have taken the funds and hidden from him that the IRS was never paid. In essence, Wise conceded an error in business judgment amounting only to negligence or malpractice.

¶9        A forensic accountant testified that Wise's practice of extending his own funds to pay his clients' estimated taxes was not illegal or unethical but expressed concern that Wise had no readily apparent or effective internal control procedures and placed too much trust in his staff. Although the expert was unable to exclude Wise as having perpetrated the scheme, neither could he exclude the assistant or Wise's partner in a boxing promotion business that operated from the same office.

¶10        The jury found Wise guilty on all counts. It also found the State had proven beyond a reasonable doubt that all of the offenses were committed for pecuniary gain and caused emotional and/or financial harm to the victims; all but counts 29 and 30 involved the taking of property in an amount sufficient to be an aggravating circumstance. The trial court classified the offenses as non-repetitive and non-dangerous and sentenced Wise to slightly aggravated terms of 7.5 years' imprisonment on counts 1, 2, and 17 to run concurrently with each other; slightly aggravated terms of 5 years' imprisonment on counts 3 through 16 to run concurrently with each other and with counts 1, 2, and 17; slightly aggravated terms of 7.5 years' imprisonment on counts 18 and 19 to run concurrently with each other and consecutive to counts 1 through 17; slightly aggravated terms of 7.5 years' imprisonment on counts 20 through 25 to run concurrently with each other and consecutive to counts 1 through 19; slightly aggravated terms of 7.5 years' imprisonment on counts 26 and 28 to run concurrently with each other and consecutive to counts 1 through 25; a slightly aggravated term of 5 years' imprisonment on count 27 to run concurrently with counts 26 and 28 and consecutive to counts 1 through 25; and the presumptive term of 5 years' imprisonment on counts 29 and 30 to run concurrently with each other and consecutive to counts 1 through 28. Wise timely appealed, and

4

we have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(1),[4] 13-4031, and -4033(A)(1).

**DISCUSSION**

I.    **Disclosure of Evidence**

¶11        Wise argues the State violated his right to due process and deprived him of a fair trial by losing, destroying, and/or delaying disclosure of exculpatory and impeachment evidence seized by the Scottsdale Police Department pursuant to search warrants executed upon Wise's home, office, and storage unit, and the office of the U.S. Bankruptcy Trustee (the Trustee).[5]  He implicitly contends the trial court erred in: (1) denying his request for disclosure of 196 bankers' boxes of documents; and (2) denying his motion to dismiss for failure to preserve material evidence located on computers and servers.  Wise preserved these issues for appeal, and we review the trial court's rulings for an abuse of discretion.  *State v. Kevil*, 111 Ariz. 240, 243 (1974) (discovery motion); *State v. Gerhardt*, 161 Ariz. 410, 413 (App. 1989) (motion to dismiss).

A.    **Disclosure of Bankers' Boxes**

¶12        In October 2010, Wise filed a comprehensive request for disclosure seeking, among other things, certain items impounded during the execution of the search warrants including cancelled checks, tax returns, legal and banking documents, client files, bank statements, and hard drives. The trial court directed briefing in regard to Wise's request for materials currently in possession of the Trustee.  Instead of providing the relevant brief, Wise submitted another request for disclosure of the contents of various bankers' boxes, which he contended contained bank statements and tax returns that would verify Wise had made payments to the IRS on behalf of the victims and client files containing correspondence to the IRS proving he attempted to rectify discrepancies in payment and lacked a specific intent to defraud.  Wise argued that because the State seized the evidence and voluntarily "gave it away" to another agency, the State had an obligation to find the evidence and make it available to the defense.

---

[4]    Absent material revisions from the relevant date, we cite a statute's current version.

[5]    At the time of his arrest in May 2009, Wise had been forced into an involuntary bankruptcy, and all of his property and assets were seized by the Trustee and placed in receivership for liquidation.

¶13 At an evidentiary hearing in April 2011, the State presented evidence that the Scottsdale Police Department seized 147 bankers' boxes of documents from Wise's storage unit, not knowing the Trustee had taken possession of the premises prior to execution of the search warrant. The next day, an additional 49 bankers' boxes of documents were seized from the Trustee's attorney's office. All 196 boxes were inventoried and, when the State determined their contents were not relevant to the charges, they were placed at an off-site location until the Trustee picked them up about eight months later. The State did not review any of the documents contained in the boxes and did not rely upon them in returning the indictments.

¶14 The trial court denied Wise's request for disclosure finding the State was not obligated to provide items not relevant to its investigation and which were no longer in its possession. It further noted that "whatever access the defendant would have had, had [these items] never been seized, is exactly the same access that the defendant has now." The court did, however, order the State to provide Wise with any information it had regarding the location and custodian of those materials.

¶15 A trial court has broad discretion in ruling upon disclosure and discovery matters. *See State v. Birdsall*, 116 Ariz. 196, 198 (App. 1977) (citing *Kevil*, 111 Ariz. at 243); *see also* Ariz. R. Crim. P. 15.1(g). In reviewing for an abuse of discretion: "The question is not whether the judges of this court would have made an original like ruling, but whether a judicial mind, in view of the law and circumstances, could have made the ruling without exceeding the bounds of reason." *Associated Indem. Corp. v. Warner*, 143 Ariz. 567, 571 (1985) (quoting *Davis v. Davis*, 78 Ariz. 174, 179 (1954) (Windes, J., specially concurring)).

¶16 Here, the trial court correctly noted that the State can only disclose materials in its possession. Ariz. R. Crim. P. 15.1(a), (b). And, the court offered a solution to allow Wise to gain access to the information he requested which was apparently successful given that, as early as August 2011, Wise's attorney reported having "examined most of the needed boxes" being held in the custody of the Trustee. In July 2012, the prosecuting attorney reported receiving a copy, from defense counsel, of all the file materials related to the victims. In September 2012, Wise's counsel admitted having received over 65,000 pages of disclosure, and Wise's December 2012 request for disclosure was nothing more than a form document that did not identify any specific materials believed to have been

withheld.[6]  Finally, although the trial court specifically advised Wise it would entertain requests for orders needed to obtain items necessary to his defense, Wise did not seek any further assistance from the court, indicating he had, in fact, received the materials sought.  We find no abuse of discretion.

### B.      Computers and Servers

**¶17**       In May 2012, Wise filed a motion to dismiss the charges against him arguing the State had failed to properly preserve information contained on one of the servers which he believed was "no longer functional."  Wise argued the server contained information regarding who had accessed the victims' electronic files and when and what functions were performed — for example, writing a check, working on tax forms, or corresponding with clients or the IRS — that would support his defense that he lacked specific intent to defraud, and that this information was impossible to recreate.  Additionally, he presented an affidavit of a senior-level technologist averring the server was "in perfect working order" at the time it was seized and opining the "crash" would occur only if the server was improperly shut down, transported, or tampered with.

**¶18**       The record reflects Wise's counsel ultimately admitted receiving the server in September 2012 — a full year before trial — and the court deemed Wise's motion moot.  Wise's contention within his supplemental brief that he was denied access to this material is not supported by the record and, therefore, provides no basis for relief on appeal.

## II.     Pre-Trial Motions

**¶19**       Wise next argues the trial court violated his right to a speedy trial by not ruling on several motions prior to trial.  He specifically identifies a motion challenging the grand jury's determination of probable cause filed

---

[6]      Wise relies upon an April 2015 affidavit in arguing "materials were missing, lost, in complete disar[r]ay, [or] clearly never copied or opened." This affidavit is not contained in the record below, and we do not consider it.  *See State v. Schackart*, 190 Ariz. 238, 247 (1997) (citations omitted). Moreover, claims based upon newly discovered evidence are not appropriate for direct appeal.  *See Krone v. Hotham*, 181 Ariz. 364, 366 (1995) (citing *State v. Scrivner*, 132 Ariz. 52, 54 (App. 1982)).

in May 2012 and a motion to dismiss, motion to suppress, and motion to continue trial filed in November 2012.

**¶20** The record reflects, however, that the trial court explicitly denied the May 2012 motion as untimely.[7]  *See* Ariz. R. Crim. P. 12.9(b) ("A motion [challenging grand jury proceedings] may be filed only after an indictment is returned and no later than 25 days after the certified transcript and minutes of the grand jury proceedings have been filed or 25 days after the arraignment is held, whichever is later.").  The November 2012 motions, although not expressly ruled upon, were submitted the day before trial was scheduled to begin and likewise untimely and precluded.  *See* Ariz. R. Crim. P. 16.1(b) ("All motions shall be made no later than 20 days prior to trial."), 16.1(c) ("Any motion, defense, objection, or request not timely raised under Rule 16.1(b) shall be precluded, unless the basis therefor was not then known . . . ."); *Foremost-McKesson Corp. v. Allied Chem. Co.*, 140 Ariz. 108, 113 (App. 1983) ("Although no formal denial of the motion appears in the record, we presume it was denied by the occurrence of the trial and verdict.").  We find no error.

## III.    Jury Nullification

**¶21** Wise also argues the trial court erred in instructing the jury it was required to follow the law and instructions it was given and thereby deprived the jury of what Wise errantly perceives to be its common law right to nullify the law.  Wise raises this issue for the first time on appeal, and we review only for fundamental error.  *See State v. Allie*, 147 Ariz. 320, 326 (1985) (citing *State v. Grillz*, 136 Ariz. 450, 454 (1983)).

**¶22** We recognize the jury's nullification power is well-established.  *See State v. Paredes-Solano*, 223 Ariz. 284, 292-93, ¶ 26 (App. 2009) (citing *Jones v. United States*, 526 U.S. 227, 245-48 (1999)).  However, contrary to Wise's assertions, "jury nullification is not the legal 'right' of either the defendant or the jury."  *Id.* at 293, ¶ 26 (citing *United States v. Kerley*, 838 F.2d 932, 938 (7th Cir. 1988)).  We have held that courts have no obligation to instruct a jury that it may contravene its duty by ignoring the law.  *Id.* (citing *United States v. Edwards*, 101 F.3d 17, 19 (2d Cir. 1996), *United*

---

[7]    Although Wise does not specifically challenge the denial of his motion challenging the grand jury proceedings, we note that appellate review has been waived.  *See Walker v. Superior Court*, 191 Ariz. 424, 428, ¶ 22 (App. 1998) ("A special action petition prior to trial is a defendant's only avenue for relief for review of the trial court's denial of a Motion for Redetermination of Probable Cause.").

*States v. Thomas*, 116 F.3d 606, 616 n.9 (2d Cir. 1997), and *United States v. Muse*, 83 F.3d 672, 677 (4th Cir. 1996)). Where, as here, the instructions correctly state the law, there is no error.

## IV. Double Jeopardy

**¶23** Wise argues ten of the sixteen convictions and sentences for theft against Arthur K. violated the Double Jeopardy Clause of the U.S. Constitution because those thefts resulted from only six misrepresentations. Specifically, he contends the legislature did not intend "a person who makes one material misrepresentation requesting to be repaid a sum of money in one payment, [to] be subjected to an infinite number of charges if the victim, independently, chooses to make numerous payments instead of one." A double jeopardy violation is fundamental, prejudicial error. *State v. Siddle*, 202 Ariz. 512, 515 n.2, ¶ 7 (App. 2002) (citing *State v. Millanes*, 180 Ariz. 418, 421 (App. 1994)).

**¶24** The prohibition against double jeopardy protects a defendant from being prosecuted or punished twice for the same crime. U.S. Const. amend. V. ("[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb."); Ariz. Const. art. 2, § 10 ("No person shall . . . be twice put in jeopardy for the same offense."); A.R.S. § 13-116 (requiring sentences arising from an act punishable in different ways by different statutes to be served concurrently). The bar on multiple punishments is designed to ensure the sentence imposed is confined to the limits established by the legislature. *See State v. Jurden*, 237 Ariz. 423, 425, ¶ 5 (App. 2015) (citing *Ohio v. Johnson*, 467 U.S. 493, 499 (1984)). A determination of whether one or more offenses occurred during the course of the defendant's conduct requires us to interpret the statute to determine the "allowable unit of prosecution." *See id.* at 425-26, ¶¶ 7-8. In doing so, we look first to the plain language. *See id.* at 426, ¶ 9.

**¶25** As relevant here, a person commits theft if "without lawful authority, the person knowingly . . . [o]btains services or property of another by means of any material misrepresentation with intent to deprive the other person of such property or services." A.R.S. § 13-1802(A)(3). On its face, A.R.S. § 13-1802(A)(3) can be reasonably read to define the allowable unit of prosecution as either the misrepresentation, or the deprivation of services or property. We conclude it is the latter for two reasons.

**¶26** First, the common element amongst the many types of theft proscribed by A.R.S. § 13-1802(A) is the wrongful taking of or control over another's property. *See State v. Mills*, 96 Ariz. 377, 381 (1964) ("The gist of the offense [of theft by false pretenses] . . . is concerned with what the defrauder obtains."); *see also State v. Tramble*, 144 Ariz. 48, 52 (1985) (noting the legislature's intent in enacting A.R.S. § 13-1802 was to merge the common law crimes of larceny, embezzlement, and false pretenses and "simplify[] prosecution for the unlawful 'acquisition' of property belonging to others."). Absent a subsequent taking, the mere misrepresentation of a fact alone is, although undesirable, generally not a criminal act.

**¶27** Second, we are not inclined, absent specific legislative directive, to bestow a benefit upon a defendant who is successful in procuring services or property from another person on multiple occasions based upon a single misrepresentation. Even where the victim acts unreasonably or foolishly, the defendant cannot rightfully benefit from his own criminal conduct. *See, e.g., State v Schneider*, 148 Ariz. 441, 445 (App. 1985) (holding victim's reliance upon defendant's misrepresentations need not be reasonable to support a conviction under Arizona law). The defendant who wrongfully and repeatedly accepts the services or property of another premised upon a misrepresentation long-since passed bears the risk of being charged for each occurrence. Wise's construction, like that advanced in *Schneider*:

> [W]ould create the paradoxical result that the most vulnerable and unsophisticated could be prey to the likes of appellant. White collar criminals would be free to act with impunity as long as they choose for their victims, the naive, the greedy or the foolhardy. The legislature has not seen fit to exempt this class of victims from the theft statute.

*Id.*

**¶28** Had Wise desired to avoid multiple charges, and multiple convictions, he need simply have refused to accept any further funds. Instead, he compounded the crime by allowing the victim to continue to act upon the false information he originally provided, and Wise is rightfully subject to multiple criminal consequences for having done so.

## V. Right to Effective Counsel

**¶29** Wise next argues the trial court erred when it "forced him to choose between trial counsel . . . who was unprepared and incompetent or appear *pro se* and represent himself at trial in a complex case." Because

Wise elected to proceed to trial with counsel, his claim is essentially for ineffective assistance of counsel which may only be raised via a petition for post-conviction relief. *State v. Spreitz*, 202 Ariz. 1, 3, ¶ 9 (2002) ("[I]neffective assistance of counsel claims are to be brought in Rule 32 proceedings . . . [and] will not be addressed by appellate courts regardless of merit."). We therefore express no opinion as to the merits of this contention.

## VI.     Permanent Deprivation

¶30        Wise next argues his convictions and sentences for fraud against Beth S. and Neil B. were in error because both victims were "made whole" when Wise complied with their demands to repay the funds owed to the IRS. Under these circumstances, Wise contends there was insufficient evidence for the jury to conclude he had a specific intent as to these victims or received a benefit. We disagree.

¶31        A person is guilty of fraud where he "pursuant to a scheme or artifice to defraud, knowingly obtains any benefit by means of false or fraudulent pretenses, representations, promises or material omissions." A.R.S. § 13-2310(A). Although the defendant must "benefit" from his actions, that benefit may be "anything of value or advantage, present or prospective." A.R.S. § 13-105(3); *see also State v. Henry*, 205 Ariz. 229, 235, ¶ 26 (App. 2003) (rejecting defendant's argument that conviction under fraud statute was invalid because there was no evidence he actually obtained the anticipated benefit). And, the return of the benefit previously obtained through the defendant's misconduct does not invalidate the conviction. *See State v. Joseph*, 20 Ariz. App. 70, 74 (1973) ("The fact that the offers of repayment were made [a]fter the acts were committed, and only after the defendant was confronted with the accusations, does not exonerate him."); *State v. Zappia*, 8 Ariz. App. 549, 554 (1968) (concluding sufficient evidence was presented to sustain theft conviction against defendant who claimed he was in process of returning a stolen watch when the owner attacked him to reclaim it), *reversed in part on other grounds by State v. Greer*, 17 Ariz. App. 162 (1972).

¶32        Contrary to Wise's assertions, sufficient evidence was presented for a reasonable jury to conclude Wise made misrepresentations to Beth S. and Neil B. for the purpose of obtaining a substantial sum of money, and that Wise was successful in doing so for some period of time. He remains responsible for those acts regardless of having repaid the victims when they discovered his misconduct.

## VII. Theft as a Lesser-Included Offense of Fraud

**¶33** Wise also argues theft, as proscribed in A.R.S. § 13-1802(A)(3), is a lesser-included offense of fraud, and his convictions for both violate double jeopardy. Under Arizona law, a lesser-included offense is "one 'composed solely of some but not all of the elements of the greater crime so that it is impossible to have committed the crime charged without having committed the lesser one." *State v. Lua*, 237 Ariz. 301, 303, ¶ 7 (2015) (quoting *State v. Celaya*, 135 Ariz. 248, 251 (1983)); *see also State v. Garcia*, 235 Ariz. 627, 629-30 (App. 2014) ("[T]he greater offense must require each element of the lesser offense plus one or more additional elements not required by the lesser offense.") (citing *State v. Tschilar*, 200 Ariz. 427, 436, ¶ 39 (App. 2001), and *State v. Foster*, 191 Ariz. 355, 357, ¶ 6 (App. 1998)). Whether one offense is included within another is a question of statutory interpretation that we review *de novo*. *Lua*, 237 Ariz. at 303, ¶ 5 (citing *State v. Geeslin*, 223 Ariz. 553, 555, ¶ 9 (2010)).

**¶34** As noted above, the offense of fraud is committed where a person, "pursuant to a scheme or artifice to defraud, knowingly obtains any benefit by means of false or fraudulent pretenses, representations, promises or material omissions." A.R.S. § 13-2310(A). The crime requires a specific intent to defraud. *State v. Via*, 146 Ariz. 108, 116 (1985) (citing *State v. Haas*, 138 Ariz. 413, 418 (1983)). And, as relevant here, "[a] person commits theft if, without lawful authority, the person knowingly . . . [o]btains services or property of another by means of any material misrepresentation with intent to deprive the other person of such property or services." A.R.S. § 13-1802(A)(3).

**¶35** Under the "elements test" defined in *Lua*, theft is not a lesser-included offense of fraud because theft under subsection (A)(3) requires an additional element — the intent to deprive — not found within the definition of fraud. *See State v. Duffy*, 124 Ariz. 267, 272 (App. 1979) (separating the intent to *defraud* from the intent to *deprive* as elements of the common law crime of theft by false pretenses) (citing *State v. Mills*, 96 Ariz. 377, 379 (1964), and *State v. Joseph*, 20 Ariz. App. 70, 72 (1973)); *see also United States v. Robinson*, 147 F.3d 851, 854 (9th Cir. 1998) (rejecting argument that "intent to defraud" within 18 U.S.C. § 545, governing smuggling of goods into the United States, is analogous to an "intent to deprive"); *compare* A.R.S. § 13-2002(A) (expressly defining mental state required for forgery conviction as "intent to defraud"), *with* A.R.S. § 13-1802(A)(1), (3), (7) (expressly defining mental state required for certain theft convictions as "intent to deprive"). Because theft is not completely subsumed within fraud, it is not a lesser-included offense. *See Garcia*, 235 Ariz. at 630, ¶ 7

(noting that, to be a lesser-included offense, the court must determine "the lesser-included offense is a subset of the alleged greater offense, such that commission of the greater offense constitutes commission of the lesser offense") (citing *Tschilar*, 200 Ariz. at 435, ¶ 39, and *Foster*, 191 Ariz. at 357, ¶ 6). To be sure, a defendant can be guilty of fraud without "obtain[ing] services or property of another," or possessing any intent to deprive the victim. *See Henry*, 205 Ariz. at 235, ¶ 25 (concluding defendant received a benefit in the form of sexual gratification which was sufficient to support the fraud conviction even where there was no apparent loss to the victim that would support a theft under A.R.S. § 13-1802(A)(3)).

¶36 Because theft is not a lesser-included offense of fraud and the evidence supports Wise's convictions for both, we find no error.

**VIII. Fundamental Error Review**

¶37 Further review reveals no fundamental error. *See Leon*, 104 Ariz. at 300 ("An exhaustive search of the record has failed to produce any prejudicial error."). Sufficient evidence was presented upon which the jury could determine beyond a reasonable doubt that Wise committed the crimes alleged in the indictment. All of the proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure. So far as the record reveals, Wise was represented by counsel at all stages of the proceedings, save for a brief period in which he knowingly and voluntarily waived his right to counsel, and was present at all critical stages including the entire trial and the verdict. The jury was properly comprised of twelve jurors, and the record shows no evidence of jury misconduct. *See* Ariz. Const. art. 2, § 23; A.R.S. § 21-102(A); Ariz. R. Crim. P. 18.1(a). At sentencing, Wise was given an opportunity to speak, and the trial court stated on the record the evidence and materials it considered and the factors it found in imposing sentence. Additionally, the sentence imposed was within the statutory limits. *See* A.R.S. § 13-702(D).

**CONCLUSION**

¶38 Wise's convictions and sentences are affirmed. After the filing of this decision, defense counsel's obligations pertaining to Wise's representation in this appeal have ended. Defense counsel need do no more than inform Wise the outcome of this appeal and his future options, unless, upon review, counsel finds an issue appropriate for submission to our supreme court by petition for review. *State v. Shattuck*, 140 Ariz. 582, 584-85 (1984).

¶**39** Wise has thirty days from the date of this decision to proceed, if he wishes, with an *in propria persona* petition for review. *See* Ariz. R. Crim. P. 31.19(a). Upon the Court's own motion, we grant Wise thirty days from the date of this decision to file an *in propria persona* motion for reconsideration.



**Ruth A. Willingham** · Clerk of the Court
F I L E D : ama